Haynes, J,
A petition in error is filed in this case to reverse the judgment of the court of common pleas, in which a verdict had been rendered for the plaintiff below, the defendant in error here, for the sum of 11787,57, for the care of the children of the defendant.
The case stands upon the facts of the case and the application of the law to those facts. The case was once tried to a jury and taken from this court to the supreme court, this court having reversed the judgment of the court below, and having set aside the verdict and remanded the case for a new trial. The supreme court affirmed the action of this court, and the case was re-tried in the court below, with the result that another verdict has been rendered in favor of the plaintiff Quigley.
There was no report of the case by the supreme court— simply reversed without report. There was not a very extended discussion of the questions in the petition in error in this court, at the time the case was reversed. We shall not go into any extended discussion of the questions this time. We do not think it is necessary. We doubt, indeed, that we could add anything to the law of the case which has *315 been cited by counsel for both parties. They have been diligent and energetic in the citation of authorities, and perhaps have given them as fully as they can be obtained, certainly more fully than we could get them. The real thing for the court to do is to apply the law to the facts of the case.
The first point that has been urged before us is this: that the court below erred in its refusal to compel the plaintiff' below to elect upon which cause of action he would proceed to the trial of the case. The first cause of action, it may be remarked, was upon an alleged argreement; the next was upon a quantum meruit, It was sought to bring the case-under sections 1310 and 3116, Revised Statutes.
The code provides (section 5060) for a statement of a-cause of action in ordinary and concise language, and in the next section, that each cause shall be separately stated and numbered if the petition contains more than one cause of action, I read from the notes and the cases therein cited: The irregularity is reached by motion,and not by demurrer; otherwise it is waived; and the refusal of a motion to compel plaintiff to separately state his causes of action is not ground of error unless the opposite party is prejudiced, 36-Ohio St,, 43. It is a general rule, however, that facts constituting a single cause of action can not be subdivided into two or more causes of action. 16 Ohio St., 88; 8 Ohio St., 215; 24 Fed. Rep, 580, Where there is one cause of action, and it is set forth in several counts, plaintiff may be compelled by motion to elect on which on9 he will rely. 10-How. Pr. 281; 8 Ohio St., 215; 16 Ohio St., 88. But where he is uncertain as to the grounds of his recovery, or there is a fair and reasonable doubt as to his ability safely to plead them in one form, he may set forth his cause of action in distinct statements, and he will not be compelled to elect as between them. 65 How. Pr, 1; 61 Cal, 209; 12 Abb. N. C. 309; 31 Hun. 432. As where plaintiff seeks to recover upon two grounds, both of which may be true, he does not know which one, he may state them as separate causes of action, and in the alternative, in one petition. 9 Bull. 355; 16 Bul. 399 (see 1 C. C. R. 203, 207.) And since our statute does not require that the facts shall be stated without unnecessary repetition, this mode of plead- *316 lag can not be regarded objectionable. 9 Bui. 355. “There may be actually two grounds, or, there being only one,certain supposed grounds may bé so connected that the plaintiff will .not be able to tell in advance which will be established upon the trial. The code will have failed in its chief object if he is forbidden to develop every ground upon which he bases his right to recover,’ Bliss Code Pl. section 120, Pomeroy Bern, section 576, 27 Wil. 327, 1 Abb. Pr. 442.
We have examined substantially all these cases, and we think the law is well settled, and is as' stated in this note. We therefore think the court did not err in refusing to require the plaintiff to elect as to which cause of action he should proceed upon. It seems to us it is clearly within the principle laid down, where the plaintiff is not certain as to which ground he can recover upon. The testimony shows that it was a very proper case for the party to set out his cause of action in two or three different forms. It is possible that by reciting the testimony he might have stated it all in one cause of action; but had he done so, he would have still been liable on motion to have his petition trimmed down for redundancy, We think it was proper for him to state it as he did state it, and then offer his testimony, and have the question submitted to the jury upon the pleadings and the evidence as it was finally developed on the trial. We have had several of these cases precisely like the case at bar, involving allegations on express contract and general account,
The more difficult question comes up as to the liability of this plaintiff in error to the defendant in error for the care of these children. A very brief recital of the facts will show the situation of the parties.
This plaintiff was a married man. His wife and he could not agree. What the difficulty was between them does not appear, and it is immaterial here, Suffice it to say, they agreed to disagree, and to live separately; but it was agreed that these two children, one perhaps five and the other two and a half years of age, should be left with the plaintiff below, Quigley, who was the foster father of Mrs. Murphy, or at least the person by whom she had been brought up. They were to be left with Quigley and his wife. I was not *317 stated how long they should be left. It was agreed that they should not be taken away without the consent of the father, and it was agreed that he should pay $5 a week for their board. It is said that nothing was said about clothing. A few weeks after that it is said that notice was served by Mr. Murphy upon Mr. Quigley that he would not be responsible for their board any longer. It is denied on the part of Mr. Quigley, I believe, that he received that letter. At the expiration of that time, Mr. Murphy, without the consent of either of these parties, took these children and put them in the convent, where he made arrangements for their board and care for an indefinite period, and for which he was to pay a certain fixed sum of money. They remained there a short time, and then the mother went to the convent and took the children, without the consent of the sisters or those in charge, and perhaps without their knowledge, and took them back to her foster father’s, the plaintiff below, and left them there. There they remained for a period of some four years, the plaintiff and his wife taking care of the children, and giving them all the care which grand-parents could give, boarding and clothing them, at which time the parents had come to some agreement in regard to their difference, and concluded to live together ■again, and did so, and the children were taken by their father and mother to their own residence. Subsequently, although it is not material here, the mother left and went back to where she had been before, in Michigan, and worked for her support on a newspaper, and the children have remained from that time to this in the care of the father, and are now with him at his residence.
Although there is but a single question here that this ■case finally turns upon, there has been an extensive discussion of the question and of the law governing this class of cases; but in the application of the law to the particular facts of this case, it seems to us that the problem is simple, or at least not very difficult.
It is claimed that when the children went back, they did not go back under the contract, and there has been some discuision of that. There might be, perhaps, some difference of opinion about that; but I am myself inclined to *318 think that when they went back the contract ought to apply, or at least it ought to be used to give some light as to the amount that should be recovered by Mr. Quigley. But the children did go back. They went back with the full knowledge of the father that they were there, and with his knowldge they remained there, and it was with his knowledge that Mr. and Mrs. Quigley were caring for them, and that Mrs. Murphy was not paying for their board and clothing. He saw the children frequently. He took them out riding from time to time, and returned them to this place. He never notified Mr. Quigley that he would not make any payment, neither was any payment demanded by Quigley during the four years they were there. The matter ran along, and stood in that shape. It was known, of course, at the time the children were originally placed there, that Mr. Quigley expected payment, and Mr. Murphy expected to pay. With these leading facts in the case, it was submitted to the jury by the court in a charge which, we think, was fair and full, and which properly submitted the issues to the jury. The real question, in our opinion, was whether this board and clothing had been furnished for these children, and furnished under such circumstances that there was fairly an implied understanding and agreement that the father should pay for the care and custody of the children,and whether the law would not imply, under all the circumstances, that he should pay for the care of the children. Questions have been discussed which are collateral to this, and which we think have no real bearing on the present issue in the case. It is a case where the jury might very properly infer that the understanding was, when the children originally went there, that the Quigleys were to be paid. The fair understanding was, when they were allowed to remain there afterward without being taken away, that the Quigleys should be paid for their care and maintenance. It was •a fair and just debt, under the old idea of quantum meruit, which is said to be as broad as a bill in equity. It was equitable upon the facts of the case that the parent should pay for the support of these children. The case was decided against the defendant below, and we see no reason why the court should disturb the verdict. The verdict, it is said, is large. It is $1700. I do not know how the jury got at *319 it. The claim below was for 225 weeks at $5 a. week,which would make it something over $1100. That was the amount of the verdict in 1896. The jury seems to have allowed about $6 a week, which, with interest from ’96 down to the present time, would make up substantially the amount of the verdict, So the only difference seems to be that in one case the jury allowed a little larger amount than in the other per week, and the interest makes up quite a large amount of difference between the two verdicts. We do not think we ought to disturb the verdict on this account.
Hiram Van Campen, Jr , for Plaintiff in Error.
Hurd, Brumback & Thatcher, for Defendant in Error.
The judgment of the court of common pleas will be affirmed, but without penalty.